```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,              )
                               )
         Plaintiff,            )  Civil Action No. 04-1684
                               )
      v.                       )  Judge Cercone
                               )  Magistrate Judge Caiazza
NEAL K. MECHLING, et al.,      )
                               )
         Defendants.           )
```

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Defendants' Motions for Summary Judgment (Doc. 41) be granted.

### II. REPORT

The Plaintiff, John Richard Jae ("Jae" or "the Plaintiff"), is a state inmate confined at the State Correctional Institution at Cresson, Pennsylvania. Jae commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that he was subjected to various violations of his constitutional rights while confined at the State Correctional Institution at Pittsburgh ("SCI-Pittsburgh") from May, 2002 through September, 2003. In Count One of the Second Amended Complaint, (Doc. 1, Ex. A)[1], Jae alleges that he was assaulted on four occasions by Corrections Officers at SCI-Pittsburgh; i.e., on May 9, 2002, May 20, 2003, June 3, 2003 and September 2, 2003. In Count Two Jae

---

1. This case was initially filed in state court and was removed to this court. Jae's Second Amended Complaint is appended to the Notice of Removal.

alleges that he was subjected to verbal threats on April 3, 2003 and May 20, 2003. Count Three includes allegations in which Jae claims that he was deprived of medical treatment for both physical and mental maladies. A Motion for Summary Judgment has been filed by all the remaining Defendants. (Doc. 41).[2] Jae has responded and the Motion is ready for disposition.

## A. The Exhaustion of Administrative Remedies

### 1. The Applicable Law.

The Defendants assert that Jae failed to exhaust his available administrative remedies with respect to the claims he sets out in Count One. The applicable - and mandatory - exhaustion requirement which Congress enacted in the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) provides that no section 1983 action may be commenced by a prisoner "until such administrative remedies as are available are exhausted". 42 U.S.C.A. § 1997e(a). Also, section 1997e(a) requires an inmate to "avail[ ] himself of every process at every turn (which would require all appeals to be timely pursued . . .)." Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir. 2004). "[I]t is beyond the power of this court - or any other- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis v. Reno, 204

---

[2]. Dr. Ginchereau has already been dismissed from the case. (Doc. 33).

F.3d 65, 73 (3d Cir. 2000).

2. The Analysis

The Defendants argue that Jae filed only a single grievance in this case; it related to an assault that was not grieved through all levels of administrative review. That said, the Pennsylvania Department of Corrections Consolidated Inmate Review System provides for three levels of administrative review of inmate grievances: the initial grievance submitted to the Facility Grievance Coordinator, an intermediate level of appeal to the Facility Manager, and a final level of appeal to the Secretary's Office of Inmate Grievances and Appeals. See Commonwealth of Pennsylvania, DOC, Consolidated Inmate Grievance Review System, Policy No. DC-ADM 804 § VI. See also Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir.2000) (outlining the grievance review process).

In support of their argument, the Defendants have included the Declaration of Kristen Reisinger ("Reisinger"). She reviewed the grievance records on behalf of the Pennsylvania Department of Corrections; Reisinger's review shows that Jae filed Grievance No. 20470 and it related only to the May 9, 2002 incident. (Doc. 41, Ex. 1, ¶ 9). This grievance was presented to the Superintendent, but was not pursued to the final level of appeal. (Id., ¶ 10). No other grievance was filed by Jae.

In response, Jay states that "[t]his Plaintiff did not fail

-3-

to exhaust his administrative remedies with regard to his allegations that he was assaulted on May 9, 2002, May 20, 2002, June 3, 2003 and September 2, 2003." (Doc. 52, at 15). His response is insufficient to defeat the Defendants' Motion. Although a court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Again, Jae's bald assertion of exhaustion is insufficient to withstand summary judgment.

In fact, Jae admits in his Response that he did not pursue Grievance No. 20470 to final review, and that he filed no other grievances. But he asserts that he never received a response from which he could pursue his appeal. Reisinger's declaration establishes, however, that Jae confronted no impediment. Grievance No. 20470 *was* appealed to the Superintendent; Jae, however, failed to pursue his appeal to the final level.

Jae also asserts that he pursued an alternative means of exhaustion by reporting the alleged abuses to the Department of Corrections' Office of Professional Responsibility, but that he never received written responses. (Doc. 54, at 6). For support, Jae cites to Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000), claiming that when an investigation has been made by the Office

of Professional Responsibility, the exhaustion requirement has been satisfied. Camp is inapposite because there the Court of Appeals found that the prisoner was in a "catch 22" quagmire because he was on "grievance restriction". Jae makes no similar claim here. More significantly, however, the court in Camp noted the Defendants' statement in which they admitted that the prisoner's allegations "[were] fully examined *on the merits*". Camp, 219 F.3d at 281 (emphasis in original).

**B.     The Remaining Claims.³**

1. The Verbal Threats.

The Plaintiff's allegations of verbal threats, unaccompanied by any allegation of physical injury, do not state a claim. See Burkholder v. Newton, 116 Fed. Appx. 358, 360 (3d Cir. 2004).

2. The Denial of Medical Care.

Jae claims that Defendants Minnick and Wyza denied him unspecified medication on one or more occasions. Jae has not, however, alleged any physical injury and his claim fails under 42 U.S.C. §1977e(e).

3. Placement in the Long Term Segregation Unit ("LTSU").

Jae alleges that his placement in the LTSU at SCI-Pittsburgh violated his rights under the Eighth and Fourteenth Amendments. His Eighth Amendment claim is premised upon an assertion that his

---

3. The Defendants have not raised the exhaustion issue with respect to the remaining claims.

mental condition raised his placement in the LTSU to the level of cruel and unusual punishment.

Generally speaking, inmates are placed in the LTSU only after they are found to be "the most incorrigible and difficult prisoners . . . ." Banks v. Beard, 399 F.3d 134, 140-41 (3d Cir. 2005). Limitations on movement and activity are inherent in their placement. Id. Jae's argument is that he suffers from a mental impairment, and that his actions are not intentionally disruptive. The Defendants, however, have presented evidence showing that Jae was placed in the LTSU on the recommendation of members of the Department of Corrections Psychology Department, who found that "[Jae's] behaviors are planned and purposeful". (Doc. 41, Ex. 2).

A violation of the Eighth Amendment requires that the Defendants act with deliberate indifference to a known medical condition, *i.e.*, that they act with a sufficiently culpable state of mind and that their acts constitute "an unnecessary and wanton infliction of pain" or are "repugnant to the conscience of mankind." Estelle v. Gamble, 429 U.S. 97, 105-06 (1978). Here, the Defendants clearly acted upon medical advice, and, consequently, they did not act with a sufficiently culpable state of mind.

Jae's claim that his placement in the LTSU violates substantive due process also fails. In Sandin v. Conner, 515 U.S.

472 (1995), the Supreme Court recognized that under certain circumstances states may create liberty interests protected by the 14th Amendment due process clause. In the prison context, however, "these interests will be generally limited to freedom from restraint . . . which impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.  Relevant here, the housing of prisoners in administrative custody is not an event that is atypical in the operation and management of a prison. In fact, the placement of an inmate in administrative custody for a period of fifteen months is a sanction not necessarily atypical or "[un]expected" when considered in the context of prison life. See Griffin v. Vaughn, 112 F.3d. 703, 708 (3d Cir. 1997) and Sandin, 515 U.S. at 485-86.

    4. The ADA Claim.

Jae attempts to allege a claim under the Americans with Disabilities Act ("ADA") based on his placement in the LTSU.  A claim under the ADA requires, *inter alia*, proof of discrimination "by reason of the plaintiff's disability." Douris v. Dougherty, 192 F. Supp.2d 358, 368 (W. D. Pa. 2002). To the contrary, Jae was placed in the LTSU because his actions were found *not* to be the result of his alleged disability. On this record, Jae cannot establish that his alleged disability motivated the Defendants' actions. Parenthetically, by raising an ADA claim, Jae cannot

question the medical opinion relied on by the Defendants. See Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996).

    5. The Retaliation Claim.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). However, to state a *prima facie* case of retaliation, a prisoner must demonstrate that:

> 1) the conduct in which he was engaged was constitutionally protected; 2) **he suffered adverse action at the hands of prison officials**; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir.2002) (internal citation and quotation omitted)(emphasis added). Here, Jae asserts that he was issued a misconduct on May 21, 2003, in retaliation for filing grievances. Jae concedes, however that the misconduct was dismissed. (Doc. 1, Ex. A at ¶ 22). Therefore, the Defendants are entitled to summary judgment on this claim because Jae cannot establish that he suffered any "adverse action."

### III. **CONCLUSION**

For the reasons set out in this Report and Recommendation, it is respectfully recommended that the Defendants' Motion for Summary Judgment (Doc. 41) be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636

(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by March 14, 2007 . Responses to objections are due by March 26, 2007.

February 27, 2007         _____
                          Francis X. Caiazza
                          United States Magistrate Judge

cc:   John Richard Jae
      BQ-3219
      SCI Cresson
      P.O. Box A
      Cresson, PA 16699